UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHARNENE JOHNSON,<br><br>    **Plaintiff,**<br><br>    v.<br><br>DISTRICT OF COLUMBIA, *et al.*,<br><br>    **Defendants.** | Civil Action No. 22-3167 (JEB) |

**MEMORANDUM OPINION**

Plaintiff Sharnene Johnson alleges that Metropolitan Police Department officers used excessive force in unlawfully restraining and subsequently shooting and killing her son, DeAndre Johnson, on October 18, 2021. Her Amended Complaint names as Defendants the District of Columbia, Chief of Police Robert Contee, Officer Juwan Jefferson, and the two unknown police officers who accompanied Jefferson during the incident. Defendants now move to dismiss a subset of Plaintiff's causes of action as legally deficient. The Court agrees that she has not sufficiently pled Contee's supervisory liability, the District's municipal liability, or one theory for negligent use of force leading to death. Her counts for negligent supervision, retention, discipline, and training, conversely, survive. The Court accordingly grants the Motion in part and denies it in part.

**I.    Background**

The Court at this stage sets forth the facts as pled in the Amended Complaint, assuming them to be true. Johnson brings this case as the mother of decedent DeAndre Johnson and as

1

Personal Representative of his estate. See ECF No. 23 (Am. Compl.), ¶ 1. (At times the Court calls individuals by their first names for the sake of clarity and without meaning any disrespect.) Sharnene alleges that on October 18, 2021, Jaquia Taylor, the mother of DeAndre's son, obtained a Temporary Protection Order against DeAndre. Id., ¶¶ 14–16; ECF No. 23-1, Exh. 3 (TPO). Later that day, Taylor requested a police escort to retrieve her belongings from the home that she shared with him. See Am. Compl., ¶¶ 14, 17. Taylor and her two children arrived at the home approximately one hour later, accompanied by Officer Jefferson and unknown officers A and B. Id., ¶¶ 19–20. Plaintiff alleges that Taylor neither provided any officer with the TPO nor informed them of DeAndre's prior violent behavior towards her. Id., ¶¶ 17–18.

After Taylor and the officers entered the home, she and DeAndre engaged in a verbal exchange, id., ¶ 22, during the course of which the unknown officers began to surround DeAndre. Id. While the pair continued their conversation, "Officer Jefferson tapped Officer B and crossed his wrists in a handcuffing motion indicating that he was going to make an arrest." Id., ¶ 23. Jefferson then placed DeAndre's right wrist into one handcuff and — along with Officer B — tackled him onto the floor of his apartment. Id., ¶ 24. While Officer B was still on top of DeAndre, Jefferson fired two shots into DeAndre's body. Id., ¶ 25. Taylor did not observe any officers providing immediate medical assistance to DeAndre after the shooting. Id., ¶ 26. He was pronounced dead on the scene. Id., ¶ 27.

On October 18, 2022, Sharnene, as Personal Representative of DeAndre's estate, brought her initial Complaint against the District of Columbia, Chief of Police Robert Contee, Officer Jefferson, and the unknown officers. See ECF No. 1 (Compl.). She then filed an Amended Complaint, which is the operative pleading here, on January 9, 2023. Her Amended Complaint raises a Fourth Amendment claim through 42 U.S.C. § 1983 against Jefferson (Count I), a § 1983

supervisory-liability claim against Contee (Count II), a municipal-liability claim against the District (Count III), as well as common-law claims for battery (Counts IV–V), assault (Counts VI–VII), negligent supervision, retention, discipline, and training (Counts VIII–XI), negligence leading to death (Counts XII–XIII), false arrest (Count XIV), and false imprisonment (Count XV). See Am. Compl. at 6, 10, 19, 23, 24, 26, 27, 30. Defendants have now filed a Partial Motion to Dismiss challenging Counts II, III, and VIII–XIII of the Amended Complaint. See ECF No. 28 (MTD).

The Court notes that Plaintiff appears to argue in her Opposition that she cannot respond to the Motion while she has Freedom of Information Act requests still pending. See ECF No. 29 (MTD Opp.) at 1–3. That, however, is not a proper response to the Motion, and the Court does not entertain it here. See Clay v. U.S. Dep't of Just., 680 F. Supp. 2d 239, 248 (D.D.C. 2010) (citing Stonehill v. IRS, 558 F.3d 534, 538 (D.C. Cir. 2009)) (noting that "FOIA is not a substitute for discovery rules which govern civil and criminal litigation"); see also Rollins v. Wackenhut Services, Inc., 703 F.3d 122, 130 (D.C. Cir. 2012) (quoting Belizan v. Hershon, 434 F.3d 579, 582 (D.C. Cir. 2006)) ("[A] bare request in an opposition to a motion to dismiss — without any indication of the particular grounds on which amendment is sought — does not constitute a motion within the contemplation of Rule 15(a).").

**II.     Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for failure to state a claim upon which relief may be granted. In evaluating such a motion to dismiss, courts must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C.

Cir. 1979)). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570) — that is, the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

The Court need not accept as true "a legal conclusion couched as a factual allegation," Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)), nor "inferences . . . unsupported by the facts set out in the complaint." Id. (quoting Kowal v. MCI Communications Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994)). And it may consider not only "the facts alleged in the complaint," but also "any documents either attached to or incorporated in the complaint[,] and matters of which [courts] may take judicial notice." Equal Emp. Opportunity Comm'n v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

**III.   Analysis**

In seeking dismissal here, Defendants first challenge Plaintiff's supervisory-liability and municipal-liability claims under 42 U.S.C. § 1983, asserting that she has failed to sufficiently plead the required elements. They also contend that Johnson has not established her common-law causes of action for negligent supervision, retention, discipline, and training, as well as negligent use of force leading to death. The Court addresses each of these arguments in turn.

    A.    <u>Counts II and III: 42 U.S.C. § 1983 Claims</u>

Plaintiff invokes the Fourth Amendment in seeking relief under 42 U.S.C. § 1983. That section creates liability for anyone who subjects or causes one to be subjected to the deprivation

of constitutional "rights, privileges, or immunities."  To state a claim under § 1983, a plaintiff must plead facts sufficient to allege: 1) "the violation of a right secured by the Constitution and the laws of the United States" and 2) "that the alleged deprivation was committed by a person acting under color of state law."  West v. Atkins, 487 U.S. 42, 48 (1988).

Johnson principally alleges that Jefferson is personally liable for his use of excessive force when he shot and killed DeAndre.  See Am. Compl., ¶¶ 28–36.  Defendants do not challenge that claim here.  See MTD at 1.  Instead, they argue that Contee and the District may not also be held liable under § 1983 for the alleged violation of DeAndre's Fourth Amendment rights.  This means that Count II, which alleges supervisory liability against Contee, and Count III, which alleges municipal liability against the District, would be dismissed.  See id.; Am. Compl. at 10, 19.

       1.    *Supervisory Liability*

Johnson seeks to hold Contee liable in his individual capacity because he did not "properly investigate, discipline, and train officers" before Jefferson shot and killed DeAndre.  See Am. Compl., ¶ 58.  More specifically, Plaintiff points to Contee's failure to properly train officers about MPD policies governing the use of deadly force and the treatment of handcuffed prisoners that she claims Jefferson violated during the incident.  See id., ¶¶ 38–46, 49.  She does not allege, however, that "Contee was personally involved in the events giving rise to the death of Mr. Johnson."  MTD Opp. at 5.  In seeking dismissal, Defendants contend that Contee cannot be held liable on such a supervisory-liability theory.

A government official may not be held liable under § 1983 solely on a *respondeat superior* theory.  See Iqbal, 556 U.S. at 676.  Rather, "[s]upervisory liability under § 1983 is triggered only when a supervisor fails to provide more stringent training in the wake of a history

5

of past transgressions by the agency or provides training 'so clearly deficient that some deprivation of rights will inevitably result absent additional instruction.'" Elkins v. District of Columbia, 690 F.3d 554, 566 (D.C. Cir. 2012) (quoting Int'l Action Ctr. v. United States, 365 F.3d 20, 27 (D.C. Cir. 2004)).  In other words, a supervisory-liability claim under § 1983 requires a plaintiff to show that the supervisor was on notice that additional training was required and that his failure to provide that additional training was causally linked to the predicate constitutional violation. Id.; see Wheeler v. Am. Univ., No. 20-2735, 2022 WL 160226, at *23 (D.D.C. Jan. 18, 2022).  Allegations about prior incidents of excessive force are insufficient to establish that causal connection here; the Court requires a stronger link between the "past transgressions" and the "likelihood" that MPD officers would use unjustified deadly force. See Jefferies v. District of Columbia, 917 F. Supp. 2d 10, 26 (D.D.C. 2013) (quoting Int'l Action Center, 365 F.3d at 27); cf.  Leach v. District of Columbia, No. 19-947, 2022 WL 1316436, at *12 (D.D.C. May 3, 2022) (denying plaintiff's municipal-liability claim because he did not plead facts "specific to lethal uses of force by MPD officers").

      Johnson presents three theories why Contee was or should have been aware of defects with MPD's training and disciplinary programs and why a "sufficient causal connection" thus exists between his failure to respond to those deficiencies and her son's death. See Am. Compl., ¶ 58; id., ¶¶ 59–88.  None is availing.

      Plaintiff first argues that Contee's oversight role over MPD's Disciplinary Review Division exposed him to at least six lawsuits against MPD, which should have alerted him to "MPD's continued use [of] excessive force." Id., ¶ 58; see id., ¶¶ 59–67.  Plaintiff, however, never asserts that any of the incidents giving rise to these suits involved violations of MPD's policies governing the use of deadly force or the treatment of handcuffed prisoners. See id.,

6

¶¶ 59–67; MTD at 8. These lawsuits consequently could not have notified Contee that there existed a need to better train officers to avoid the infraction alleged in the Amended Complaint. Plaintiff, moreover, does not establish that Contee — who assumed his position with the review board in 2016 — was or should have been familiar with this series of lawsuits stretching back to 2010. See Am. Compl., ¶¶ 52, 59–67; MTD at 8.

Johnson next maintains that Contee was placed on notice for purposes of § 1983 supervisory liability because Jefferson had "one prior UFRB [Use of Force Review Board] finding against him for reckless use of his firearm and a history of violating MPD General Orders" regarding paperwork. See Am. Compl., ¶¶ 68, 73. Plaintiff includes as an exhibit to the Amended Complaint a report describing the incident that precipitated the adverse UFRB finding. See ECF No. 23-1, Exh. 9 (MPD Audit). The report states that during a firefight with an armed suspect, Jefferson fired a round that struck a fellow police officer in his bulletproof vest, and it recommends that Jefferson undergo further tactical training. See id. at xii–xiii; Am. Compl., ¶¶ 69–71. Despite noting Jefferson's "tactical shortcomings," the report concludes that his use of deadly force was justified. See MPD Audit at xiii, 76. While that incident may have created concerns about Jefferson's marksmanship, it cannot be said to have raised a red flag that he would use unjustified deadly force in the future. Similarly, Plaintiff's allegation that Jefferson violated District policy by failing to submit required paperwork after the incident is inapposite, for that administrative infraction bears little relation to his alleged use of excessive deadly force. See Am. Compl., ¶ 73; MTD at 9.

Last, Johnson relies on a portion of a June 2022 report from the Office of Police Complaints detailing instances in which MPD officers discharged their weapons at people during the previous year. See id., ¶¶ 76-77; ECF No 23-1, Exh. 10 (OPC Use of Force Report). She

points to the report's description of the shooting of DeAndre and its recommendation that MPD's policies be reformulated to clarify that only a minimum of force may be applied to handcuffed prisoners. See OPC Use of Force Report at 37, 41; Am. Compl., ¶ 80. That recommendation made in June 2022, however, cannot be said to have placed Contee on notice as to a need for additional training on the treatment of handcuffed prisoners before the October 18, 2021, incident occurred. Plaintiff, moreover, does not identify in the report any mention of an officer-involved shooting beyond our incident that the UFRB deemed to have involved the unjustified use of lethal force, even assuming Contee was aware of them before the report. Instead, she points only to the report's criticism of MPD officers' use of neck restraints. See OPC Use of Force Report at 38; Am. Compl., ¶ 79. Because Plaintiff does not allege that Jefferson or the unidentified officers applied such a tool against Jefferson, those allegations have no bearing here.

In sum, as the Amended Complaint is devoid of factual allegations that Contee "had actual or constructive knowledge of past transgressions or that [he was] responsible for or aware of 'clearly deficient' training," Johnson's attempt to hold him liable "fades into *respondeat superior* or vicarious liability, clearly barred under Section 1983." James v. District of Columbia, No. 20-335, 2022 WL 951265, at *4 (D.D.C. Mar. 30, 2022) (quoting Int'l Action Ctr., 365 F.3d at 27–28)). Plaintiff's 42 U.S.C. § 1983 claim against Contee will accordingly be dismissed.

    2.  *Municipal Liability*

The District similarly contends that it cannot be held liable under a theory of municipal liability. A municipality, including the District of Columbia, may be sued as a person under § 1983. Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690 (1978); see also Dorman v. District of Columbia, 888 F.2d 159, 162 (D.C. Cir. 1989). That section, however,

imposes liability on a municipality only for its own illegal actions — *i.e.*, "'action [taken] pursuant to official municipal policy'" — that "'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such a deprivation." Connick v. Thompson, 563 U.S. 51, 60 (2011) (quoting Monell, 436 U.S. at 691–92).

Plaintiffs may state a claim that such an official municipal policy exists by showing that:

> (1) the municipality adopts a policy that itself violates the Constitution; (2) the unconstitutional action was taken by a "policy maker" within the government; (3) the employees' unconstitutional actions "are so consistent that they have become [a] 'custom'" of the municipality of which the supervising policymaker must have been aware; or (4) the municipality knew or should have known of a risk of constitutional violations, but showed "deliberate indifference" to that risk by failing to act.

Hurd v. District of Columbia, 997 F.3d 332, 337 (D.C. Cir. 2021) (quoting Baker v. District of Columbia, 326 F.3d 1302, 1306 (D.C. Cir. 2003)) (emphasis added).

Municipal liability under Monell also requires a showing of causation — specifically, a § 1983 plaintiff must plead facts to support an inference that the official municipal policy "'cause[d] an employee to violate another's constitutional rights." Monell, 475 U.S. at 692 (citing Rizzo v. Goode, 423 U.S. 362, 370–71 (1976)).  In other words, "a municipality can be liable under § 1983 only where its policies [or customs] are the 'moving force [behind] the constitutional violation.'" City of Canton v. Harris, 489 U.S. 378, 388–389 (1989) (quoting Monell, 436 U.S. at 694; Polk County v. Dodson, 454 U.S. 312, 326 (1981)).

Johnson's § 1983 claim against the District draws on the custom and deliberate-indifference routes in seeking to show that there existed a District policy condoning "MPD officers' excessive use of force" and that this policy was the "moving force[]" behind the violation of DeAndre's Fourth Amendment rights.  See Am. Compl., ¶¶ 105, 107.  The District maintains that dismissal is appropriate because Plaintiff has not pled sufficient facts to establish

9

such an official municipal policy or, in the alternative, to demonstrate that such a policy caused the predicate constitutional violation. See MTD at 12. The Court looks separately at Johnson's custom and deliberate-indifference theories.

        a.      Custom

Plaintiff first alleges that Contee and the District were "aware of MPD officers' excessive use of force," Am. Compl., ¶ 107, and that this misfeasance was adopted as municipal custom through Contee's failure to intervene to improve MPD's training or disciplinary programs. See id., ¶ 106. The factual allegations supporting this theory, however, are far too general to establish municipal liability based on custom.

"To hold a municipality liable based on a pattern of similar constitutional violations, a plaintiff must show that the municipality 'knowingly ignore[d] a practice that was consistent enough to constitute custom.'" Hurd, 997 F.3d at 338 (quoting Warren v. District of Columbia, 353 F.3d 36, 39 (D.C. Cir. 2004)). To impose municipal liability, moreover, the consistent past practice must consist of "facially similar past wrongdoing" to the predicate violation. Leach, 2022 WL 1316436, at *13; compare Hunter v. District of Columbia, 824 F. Supp. 2d 125, 133–34 (D.D.C. 2011) (holding that plaintiff failed to state custom basis for municipal liability for arrests without probable cause where "[he] was not arrested for the offense examined in the report on which he relies"), with Matthews v. District of Columbia, 730 F. Supp. 2d 33, 37–38 (D.D.C. 2010) (finding plausible claim of municipal custom of conducting unlawful strip searches where six such searches occurred in two-year span).

Leach v. District of Columbia, 2022 WL 1316436, decided by Judge Mehta of this district, is instructive on this point. In that case, the plaintiff adduced "generic data about lawsuits, settlements, District budgets, and sustained complaints about MPD officers' use of

force" in support of his allegation that there existed a municipal custom condoning the excessive use of force. Id. at *12. The court dismissed that claim, explaining that "data about unspecified officer misconduct and facts and figures about the same are simply too generic to plausibly support municipal liability based on custom for Plaintiff's specific excessive use-of-force claim." Id. at *13 (internal quotation marks omitted).

Plaintiff does not identify a single incident preceding the October 18, 2021, shooting in which the URFB deemed an MPD officer to have used unjustified deadly force. See MTD at 11. This is fatal to her claim. She falls back instead on figures about a much broader category — incidence of excessive force during Contee's tenure as Chief of Police — and a report criticizing MPD's response to community complaints as being too lenient. See Am. Compl., ¶¶ 98–103; ECF No. 23-1, Exh. 11 (OPC Policy Report) at 1–6. Absent allegations that these excessive-force incidents involved conduct resembling Jefferson's or that insufficiently stern discipline of officers with sustained complaints for using excessive force was relevant to DeAndre's shooting, these data points bear too attenuated a relationship to the predicate constitutional violation Plaintiff alleges to establish a municipal custom. See Hurd, 997 F.3d at 338 (finding failure to establish municipal custom where plaintiff relied on "failures by the District that bear little resemblance to the type of unconstitutional conduct asserted by [plaintiff]").

### b.   Deliberate Indifference

Johnson next maintains that the District was deliberately indifferent to the risk that, if it did not better train its officers in the legal use of force and more sternly discipline those officers found to have used force excessively, MPD personnel would inevitably commit constitutional violations. See Am. Compl., ¶ 106; MTD Opp. at 6.

"[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Connick, 563 U.S. at 61 (internal quotation marks omitted). Plaintiffs whose deliberate-indifference theories for municipal liability rest on an alleged failure to train or to discipline must show that "[municipal] policymakers are on actual or constructive notice that a particular omission in their training program causes [municipal] employees to violate citizens' constitutional rights." Id. To make this showing, plaintiffs must ordinarily demonstrate "[a] pattern of similar constitutional violations by untrained employees." Id. at 62. Whether a pattern of constitutional torts bears a sufficient relationship to the alleged violation to place the defendant municipality on notice hinges on whether the violations "have materially similar legal implications." Hurd, 997 F.3d at 340.

Johnson does not identify such a pattern. She instead draws on the same evidence that was insufficient to support either her supervisory-liability or her municipal-custom claim — *e.g.*, OPC adjudications detailing MPD officers' use of either excessive but non-lethal force or justified deadly force. See Am. Compl., ¶ 107; ECF No. 23-1, Exh. 13 (OPC Adjudications). Because the information Plaintiff presents is not "specific to lethal uses of force by MPD officers," she has failed to "allege [the] comparable situational data or examples to make out a plausible deliberate-indifference theory." Leach, 2022 WL 1316436, at *12 (emphasis omitted); cf. Robinson v. Pezzat, 818 F.3d 1, 13 (D.C. Cir. 2016) (holding that pattern of lawful shootings by MPD officers of dogs did not place District on notice as to risk of unconstitutional canine killings).

There is an alternative route to establishing deliberate indifference, but it is not applicable here. In those "rare" instances when the "unconstitutional consequences of failing to train" were

12

"patently obvious," municipalities may be held liable on a deliberate-indifference theory "without proof of a pre-existing pattern of violations." Connick, 563 U.S. at 64 (citing Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 409 (1997)). Plaintiff, however, does not expressly raise a single-incident theory, and even if she did, this is not an exceptional instance where such a theory would be successful. See MTD at 14. Johnson does not allege, for example, that MPD has entirely failed to train its officers on its use-of-force policies or that those policies were themselves deficient. On the contrary, she has "at most, allege[d] that [DeAndre] encountered several poorly trained officers" who violated MPD's policies. Xingru Lin v. District of Columbia, 268 F. Supp. 3d 91, 101 (D.D.C. 2017); see Am. Compl., ¶¶ 44–46. Absent a showing that "the failure to provide proper training may fairly be said to represent a policy for which the city is responsible[,] . . . [the fact that] a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city." Canton, 489 U.S. at 390.

For these reasons, the District must also be dismissed as a Defendant on this cause of action.

> B. Counts VIII–XIII: Common-Law Negligence Claims

Defendants' challenges to the next series of counts can be divided into two groups for ease of analysis.

> 1. *Negligent Supervision, Retention, Discipline, and Training*

Defendants first move to dismiss the Amended Complaint's Counts VIII–XI on the ground that Plaintiff did not sufficiently plead facts supporting the claims that Defendants Contee's and the District's negligent supervision, retention, disciplining, and training of MPD officers resulted in DeAndre's wrongful death. See MTD at 16 (arguing that Plaintiff's "pleadings provide no factual support" for negligence claims).

"The law is well-settled that [l]iability for negligent supervision arises when an employer knew or should have known its employee behaved in a dangerous or otherwise incompetent manner, and that the employer, armed with that actual or constructive knowledge, failed to adequately supervise the employee." Moore v. District of Columbia, 79 F. Supp. 3d 121, 142 (D.D.C. 2015) (citing Godfrey v. Iverson, 559 F.3d 569, 571 (D.C. Cir. 2009)) (quotation marks omitted); see also James v. District of Columbia, 869 F. Supp. 2d 119, 121 (D.D.C. 2012) (same standard for negligent retention and including failure to discipline in negligent-supervision analysis); Xingru Lin v. District of Columbia, No. 16-645, 2019 WL 1597876, at *11 (D.D.C. Apr. 15, 2019) (same standard for negligent training).

While Plaintiff's Amended Complaint did not sufficiently plead § 1983 supervisory liability, the standard for common-law negligent supervision, retention, discipline, and training — as aggregated in the collected cases above — is much lower. Here, Plaintiff must merely link (1) a showing of prior "dangerous or otherwise incompetent" behavior to (2) a "fail[ure] to adequately supervise." Moore, 79 F. Supp. 3d at 142. Even where a complaint "is somewhat light on factual allegations[,] . . . the plaintiff's burden at the pleading stage is 'minimal.'" James, 869 F. Supp. 2d at 121 (allowing an MPD negligent-supervision case with "thin" factual allegations to survive motion to dismiss) (citation omitted). Because Plaintiff alleges no facts detailing Unknown Officers A's or B's past behavior, her negligent-supervision claims as they pertain to those Defendants will be dismissed. The Court now considers Defendants' supervision of Officer Jefferson.

Turning to the first prong, Johnson sufficiently alleges facts supporting the inference that Defendants had actual or constructive knowledge of Jefferson's past dangerous or incompetent behavior. Ashcroft, 556 U.S. at 678; Am. Compl., ¶¶ 68–75. According to the MPD Audit of a

14

prior incident, the UFRB endorsed the finding that Jefferson's actions, although justified, "warranted a 'tactical improvement opportunity' for accidentally shooting [another officer] during the exchange of gunfire." MPD Audit at 77. The officers' positioning, a key tactical error in that incident, "had a number of significant consequences, including . . . excessive gunfire from unsafe shooting positions[] and unnecessary risks to civilians both inside and outside the apartment building." Id. at xiii. Notably, "the only tactical improvement recommended by the report was directed at Officer Jefferson," and "all of the officers, except Officer Jefferson, acted within MPD policy." Id. at 77, 85. The report found that Jefferson was "responsible for ensuring no other persons were within his line of fire for each shot." Id. at xiii. Such allegations, while insufficient for a constitutional claim, tend to support a finding that "the employer 'knew or should have known its employee behaved in a dangerous or otherwise incompetent manner'" and suffice for the 12(b)(6) stage. Spicer v. District of Columbia, 916 F. Supp. 2d 1, 3 (D.D.C. 2013) (quoting Phelan v. City of Mount Rainier, 805 A.2d 930, 937–38 (D.C. 2002)).

     Defendants erroneously cite Rice v. District of Columbia, 715 F. Supp. 2d 127 (D.D.C. 2010), for the proposition that "general allegations that an officer is not 'competent' do[] not state a claim of negligent retention." MTD at 16. In Rice, however, the "Amended Complaint [merely] allege[d] that the District had knowledge of [the] Officer['s] alleged incompetence and negligently breached its duty of care by continuing to employ [the] Officer." 715 F. Supp. 2d at 133. The pleadings essentially amounted to a "formulaic recitation of the elements of a cause of action" lacking in any factual substantiation. Id. Not so here, where the Amended Complaint contains factual allegations suggesting that Jefferson had incompetently violated MPD policy in the past by accidentally firing his gun at his colleague. See Xingru Lin, 2019 WL 1597876, at

15

\*12 (finding that Plaintiff "pled at least minimal factual allegations in support of the District of Columbia's actual or constructive knowledge" of dangerous or incompetent behavior by listing prior incidents).

Similarly, Defendants cite Spiller v. District of Columbia, 302 F. Supp. 3d 240 (D.D.C. 2018), and Harvey v. Kasco, 109 F. Supp. 3d 173 (D.D.C. 2015), as examples of dismissals of negligent-training and -supervision claims. See MTD at 16–17. "In both Spiller and Harvey, it appears that the plaintiffs had failed to plead any facts in support of the allegations that the District of Columbia knew or should have known about the risk posed by its officers." Xingru Lin, 2019 WL 1597876, at \*12. In contrast, "[h]ere, Plaintiff has pled at least minimal factual allegations in support of the District of Columbia's actual or constructive knowledge." Id; see also Blakeney v. O'Donnell, 117 F. Supp. 3d 6, 21 (D.D.C. 2015) (dismissing negligent-training and -supervision claim where Plaintiff pled no facts relating to District's knowledge or supervision of employees).

On the second prong of the standard, Johnson's allegations link Defendants' constructive knowledge of prior dangerous behavior or incompetence with a failure to adequately supervise. See Am. Compl., ¶ 129. For example, the MPD Audit highlighted tactical "shortcomings [that] were not adequately investigated by [MPD's Internal Affairs Division (IAD)] and not adequately identified and analyzed in the IAD report or by the UFRB." MPD Audit at xiii. According to the Audit, MPD's internal report should have further addressed "how Officer Jefferson could have avoided [his] potentially deadly error." Id. at 77. As relevant to Plaintiff's negligent-supervision allegations: "[B]est policing practices require a more thorough follow-up by the UFRB on each finding [of a tactical shortcoming]. The investigative record should include

16

evidence that MPD officials discussed inappropriate and ill-advised tactics with the officers and implemented remedial actions." Id.

As a result, the Complaint sufficiently identified Jefferson's prior dangerous conduct and alleged a negligent failure to supervise — and, by extension, to retain, discipline, and train — in response. "[T]hese factual allegations meet Rule 8(a)(2)'s threshold requirement that the plaintiff put forth a 'short and plain statement of the claim' such that the defendant is put on 'fair notice' of the nature of the plaintiff's claim and the grounds upon which it rests." James, 869 F. Supp. 2d at 121 (citing Twombly, 550 U.S. at 555). The Court accordingly denies Defendants' Motion to Dismiss with respect to Counts VIII–XI relating to Jefferson.

2. *Negligent Use of Force Leading to Death*

Last, Plaintiff alleges two separate theories to support her negligence-leading-to-death claims under Counts XII and XIII: Defendants failed (1) "to provide immediate first-aid services and failed to promptly relay the urgent need for medical support"; and (2) "to exercise reasonable care, including using only the minimum amount of force necessary against him, exhausting every other reasonable means of apprehension or defense before resorting to the use of firearms, and calling emergency services immediately after a shooting occurs." Am. Compl., ¶¶ 143–44. Defendants' Motion challenges only the latter theory on the ground that it is subsumed by Plaintiff's assault and battery claims. See MTD at 17.

Although Plaintiff raises this as an unintentional-tort claim, it is based on facts similar to those that form the basis of Counts IV-VII — Plaintiff's assault and battery causes of action. See Am. Compl., ¶¶ 108–16. "[B]oth negligence and battery claims, [however], must be separate and distinct from each other, even though related, and each of the two counts must be supported by the necessary evidence." District of Columbia v. Chinn, 839 A.2d 701, 707 (D.C. 2003). In

other words, Plaintiff must separately plead a distinct factual scenario for her negligence and assault and battery claims. If she "does not articulate [distinct] elements of a negligen[ce] action, [she] may not bootstrap from the battery proof alone, as one may not commit a negligent assault." Id. at 710.

Plaintiff identifies distinct "duties" in the MPD's General Orders, see Am. Compl., ¶¶ 139–41, but she does not plead a distinct factual pattern separating her negligence claim from her assault and battery claims. In Chinn, the court held that "where the excessive force is the product of a battery, an unwanted touching inherent in any arrest, which escalates in an unbroken manner into excessive force, the cause of action is a battery alone, with [a negligence claim] having ended at the point where excessive force began." 839 A.2d at 707. In Blair v. District of Columbia, 190 A.3d 212, 222 (D.C. 2018), the court further elaborated that, "as a general rule, evidence reflecting an unbroken escalation from permissive to excessive force preempts a lesser negligence claim based on the same evidence." Here, Plaintiff describes such an unbroken escalation. From the moment that Jefferson signaled to Unknown Officer B that he was going to make an arrest, the interaction devolved into a violent confrontation. See Am. Compl., ¶¶ 23–25. Plaintiff does not identify distinct factual patterns that differentiate her intentional torts from her unintentional ones as they pertain to use of force. Id., ¶¶ 133–54 (describing violent escalation as unbroken chain of events). "[A] plaintiff cannot seek to recover by 'dressing up the substance' of one claim, here assault, in the 'garments' of another, here negligence." Blair, 190 A.3d at 222. The Court therefore dismisses the components of Counts XII–XIII that are based on negligent use of force leading to death.

other words, Plaintiff must separately plead a distinct factual scenario for her negligence and assault and battery claims. If she "does not articulate [distinct] elements of a negligen[ce] action, [she] may not bootstrap from the battery proof alone, as one may not commit a negligent assault." Id. at 710.

Plaintiff identifies distinct "duties" in the MPD's General Orders, see Am. Compl., ¶¶ 139–41, but she does not plead a distinct factual pattern separating her negligence claim from her assault and battery claims. In Chinn, the court held that "where the excessive force is the product of a battery, an unwanted touching inherent in any arrest, which escalates in an unbroken manner into excessive force, the cause of action is a battery alone, with [a negligence claim] having ended at the point where excessive force began." 839 A.2d at 707. In Blair v. District of Columbia, 190 A.3d 212, 222 (D.C. 2018), the court further elaborated that, "as a general rule, evidence reflecting an unbroken escalation from permissive to excessive force preempts a lesser negligence claim based on the same evidence." Here, Plaintiff describes such an unbroken escalation. From the moment that Jefferson signaled to Unknown Officer B that he was going to make an arrest, the interaction devolved into a violent confrontation. See Am. Compl., ¶¶ 23–25. Plaintiff does not identify distinct factual patterns that differentiate her intentional torts from her unintentional ones as they pertain to use of force. Id., ¶¶ 133–54 (describing violent escalation as unbroken chain of events). "[A] plaintiff cannot seek to recover by 'dressing up the substance' of one claim, here assault, in the 'garments' of another, here negligence." Blair, 190 A.3d at 222. The Court therefore dismisses the components of Counts XII–XIII that are based on negligent use of force leading to death.

**IV.	Conclusion**

The Court, accordingly, will dismiss Counts II and III. It will also dismiss Counts XII–XIII only insofar as they are predicated on the negligent use of force rather than the negligent failure to provide medical care. The Court will deny Defendants' Motion as to Counts VIII–XI. A contemporaneous Order will so indicate.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: April 4, 2023