UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SHARNENE JOHNSON,

    Plaintiff.

        v.

DISTRICT OF COLUMBIA, *et al.*,

    Defendants.

Civil Action No. 22-3167 (JEB)

**MEMORANDUM OPINION**

    In 2021, a Metropolitan Police Department officer shot and killed DeAndre Johnson while enforcing a civil protection order. Sharnene Johnson, his mother and the Personal Representative of his estate, has sued the District of Columbia, Robert Contee (Chief of Police), Juwan Jefferson (Involved Officer), and Unknown Officers A and B.

    The parties now dispute the proposed Protective Order, which Defendants have moved the Court to approve. Specifically, Plaintiff contests certain confidentiality labels as well as procedures surrounding the handling of confidential documents. Finding the Protective Order reasonable, the Court will grant the Motion.

**I.    Legal Standard**

    Where a movant can show "good cause," Federal Rule of Civil Procedure 26(c)(1) permits courts to issue protective orders to guard against "annoyance, embarrassment, oppression, or undue burden or expense." Trial courts have "broad discretion . . . to decide when a protective order is appropriate and what degree of protection is required." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984). "[T]he 'good cause' standard . . . is a flexible one that requires an individualized balancing of the many interests that may be present in a particular

case." United States v. Microsoft Corp., 165 F.3d 952, 960 (D.C. Cir. 1999). Ultimately, though, the party requesting the protective order has the burden to establish that it should be granted. See United States v. One Gulfstream G-V Jet Aircraft Displaying Tail No. VPCES, 304 F.R.D. 10, 12 (D.D.C. 2014); Doe v. Provident Life & Accident Ins. Co., 247 F.R.D. 218, 221 (D.D.C. 2008). To satisfy such burden, the movant "must make a specific demonstration of facts in support of the request as opposed to conclusory or speculative statements about the need for a protective order and the harm which will be suffered without one." Alexander v. FBI, 186 F.R.D. 71, 75 (D.D.C. 1998).

## II. Analysis

As the underlying facts are not relevant for purposes of this Motion, the Court need not recount them here. Plaintiff filed her Complaint on October 18, 2022. See ECF No. 1 (Compl.). On May 3, 2023, the parties agreed that a protective order governing the exchange and use of confidential information should be filed. See ECF No. 34 (Meet and Confer Statement). On June 16, Defendants filed the instant Motion, which Plaintiff opposes in part. See ECF No. 36 (Mot. for Protective Order); ECF No. 37 (Opp.).

While both sides agree on much of the Protective Order, Plaintiff objects to ten provisions: ¶¶ 1.c, 1.d, 1.h, 4, 5, 14, 15, 20, 21, 28. See Mot. For Protective Order at 2. She most strongly contests whether a confidentiality label should be put on the following categories: "1.c. Non-public information such as information contained in investigative files; 1.d. Unredacted body-worn camera footage;" and "1.h. Other non-public information that a producing party reasonably and in good faith determines should be subject to the terms of this Order because the disclosure could harm the interest of a child, or harm the [Office of the Attorney General's] ability to carry out its obligations under law or regulation." ECF No. 36-1

(Proposed Protective Order) at 2.  Plaintiff also objects to ¶ 4, which allows parties to label confidential materials as attorney's-eyes only (AEO) during the litigation, and ¶ 28, which limits the retention of such documents to 30 days following the conclusion of litigation.  Id. at 3, 11.  The Court considers each in turn.

    A.  Categories of Confidential Information (¶¶ 1.c, 1.d, 1.h)

The Court begins with the categories of confidential information in ¶¶ 1.c, 1.d, and 1.h.

As to the body-worn-camera (BWC) footage (¶ 1.d), which is at the heart of the dispute, Defendants affirmatively argue that the Protective Order is necessary because the "BWC footage contains names, faces, and other personally identifying information of civilian witnesses, including minor children, as well as first responders including members of the Metropolitan Police Department and D.C. Fire and Emergency Medical Services."  Mot. for Protective Order at 4.  While this appears reasonable on its face, Johnson rejoins that: (1) Defendants' request runs counter to D.C. regulations, (2) concerns about unredacted BWC footage are already remedied by other elements of the Protective Order that Plaintiff has agreed to, and (3) Defendants have not claimed a specific or serious enough injury for requesting a protective order for the unredacted BWC footage.

The Court can quickly dispense with Plaintiff's first and second arguments.  Her quotation from the D.C. Municipal Regulations describes procedures under which "the Department shall schedule a time for [certain] individuals to view a BWC recording" and does not relate to the confidentiality label of an unredacted video in a civil proceeding.  See D.C. Mun. Reg. tit. 24, § 3902.5(a).  This argument is thus irrelevant.  Next, Plaintiff asserts that other parts of the Protective Order already protect juvenile witnesses.  See Proposed Protective Order at 2 (categorizing "[i]nformation and documents involving minors" as confidential).  While that

3

may be true, the confidentiality label on the BWC footage covers much more ground than those other provisions. It limits the ability of Johnson and others to use this footage in future cases involving MPD, and it prevents them from keeping the footage beyond the duration of the litigation. Id. at 11. Defendants' proposed additional protections are sufficiently warranted by the interests at stake.

Plaintiff's most substantive argument is that a specific or serious injury has not been alleged. See Opp. at 3. For her position, she relies almost entirely on an unreported case from the Eastern District of Michigan, in which a court denied the Government's protective order even when the safety of witnesses was implicated. See United States v. Stone, No. 10-20123, 2012 WL 137746, at *1, *3 (E.D. Mich. Jan. 18, 2012) (concerning disclosure of witness statements and grand-jury transcripts); Opp. at 3–4. That case, while not binding in any event, also has nothing to do with BWC footage.

Courts in this district have held that protective orders are the "only way to avert the possible harm to the victim and witnesses of having their names, faces, and other personally identifying information released." United States v. Dixon, 355 F. Supp. 3d 1, 9 (D.D.C. 2019); see also United States v. Johnson, 314 F. Supp. 3d 248, 257 (D.D.C. 2014) (observing that "body-worn camera footage is likely to contain sensitive information in which witnesses and others depicted on the footage have a legitimate privacy interest."); United States v. Kingsbury, 325 F. Supp. 3d 158, 160 (D.D.C. 2018) (finding specific "need to protect the privacy of noncivilian witnesses (*i.e.*, the police)") (formatting altered). It is true that a court in this district allowed parties to "retain the footage indefinitely" and "use the footage in other cases." Johnson, 314 F. Supp. 3d at 258. The footage in that case, however, was already redacted, while in this

4

case Plaintiff requests that unredacted BWC footage be produced without a confidentiality label. Id. at 255.

The Court concludes that the asserted interest in protecting juveniles and first responders outweighs Plaintiff's generalized interests in public disclosure and scrutiny, particularly given that all parties in the case will have access to the full, unredacted footage for purposes of the current litigation.

As for ¶ 1.c ("Non-public information such as information contained in investigative files") and ¶ 1.h ("Other non-public information that a producing party reasonably and in good faith determines should be subject to the terms of this Order"), Plaintiff does not specifically articulate her concern with these provisions. Coupled with the Government's reasons for the proposed Protective Order, see Mot. for Protective Order at 3–5, the Court sees no reason not to adopt them.

### B.  Attorney's-Eyes Only (¶ 4)

Defendants have also requested a provision that would allow parties to designate an item as AEO at any time, subject to the procedural framework for challenges delineated in the Motion for Protective Order. Although Plaintiff opposes this request in principle, see Opp. at 5, nothing has yet been designated as AEO. Her concerns are thus speculative at this point. If in the future documents are so designated by Defendants that both parties cannot agree on, Plaintiff may return to the Court to seek relief. For now, the Court will approve this provision.

### C.  Handling of Confidential Information (¶ 28)

The final dispute is whether Plaintiff can keep confidential material or whether she must destroy it no more than 30 days after the termination of this action and any appeals. Johnson asserts that this Protective Order would violate her attorney's retention policy, which is in

accordance with D.C. Bar and Ethics Rules.  <u>See</u> Opp. at 6.  She does not acknowledge, however, that the D.C. Bar and Ethics Rules require the maintenance of <u>case</u> files, not documents produced in discovery.  Her true concern becomes more apparent in the following sentence: "[I]t is important to maintain any discovery provided in this case for future proceedings involving Ms. Johnson or any third parties."  <u>Id.</u> at 6.  The Government correctly argues that discovery requests should not be used to gather information for use in other proceedings.  <u>See</u> Reply at 7 (quoting <u>Oppenheimer Fund, Inc. v. Sanders</u>, 437 U.S. 340, 352 n.17 (1978)).  There is thus no good reason to excise this standard provision.

D.  <u>All Other Provisions</u>

Although she gestures at other objections, Plaintiff never specifically contests the remaining provisions of the proposed Order.  Since the Government provides a number of solid reasons for these provisions in its Motion, <u>see</u> Mot. for Protective Order at 3–5, the Court will approve ¶¶ 5, 14, 15, 20, 21.

**III.  Conclusion**

For the foregoing reasons, the Court will grant the entirety of the Motion for a Protective Order.  A contemporaneous Order so stating will issue this day.

/s/ *James E. Boasberg*<br>JAMES E. BOASBERG<br>Chief Judge

Date:  <u>July 21, 2023</u>